IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RML CAPITAL INVESTMENT, LLC, et al.[1] | No. 09-04609 |
| | Judge John Squires |
| Debtors | |

### AGREED FINAL ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO THE HARRIS BANK[2]

RML Capital Investment, LLC, an Illinois limited liability company, John M. Schoppe, Premier Homes, LLC, and Highland Real Estate of Aurora, Inc., as debtors and debtors-in-possession (the "*Debtors*"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "*Code*"), with this Court on February 13, 2009 (the "*Filing Date*"). On February 20, 2009, the Debtors filed a motion (the "*Motion*") for the entry of an interim order (a) authorizing the Debtors' to use cash collateral to satisfy payroll the other obligations, (b) providing adequate protection to the Harris Bank of Aurora (the "Bank"), and (c) setting a final hearing on the debtors' motion.

Counsel for the Debtors and counsel for the Bank having consented to the entry of this Order, and notice of the Motion having been given to the Bank, to the Debtors' 20 largest

---

[1] The debtors in these chapter 11 cases are RML Capital Investment, LLC, John M. Schoppe (Case No. 09-04652), Premier Homes, LLC (Case NO. 09-04654), and Highland Real Estate of Aurora, Inc. (Case No. 09-04656).

[2] Harris Bank has two distinct leading relationships with the Debtors. One lending relationship involves commercial, income producing property. That Harris bank relationship shall be defined and identified as Harris Bank Commercial credit Facility ("HBCC"). The other lending relationship involves mortgages on properties that do not create income ("Harris Bank"). HBCC results in the production of cash collateral through rentals received on three distinct properties identified on Debtor's Exhibit 1, which is a spreadsheet of properties it has an ownership interest, to its Motion for Use of Cash Collateral. These income producing properties and rents received from same are identified by Debtor as follows: (Chestnut Street ($ _____ ), Kevin Drive ($13,840) and Felten Road ($3,038), these properties shall be referred to as "HBCC Properties".

unsecured creditors, to the United States Trustee, and to any other party entitled to notice under Bankruptcy Rule 4001(b), and such notice being appropriate under the circumstances and in light of the emergency nature of the Motion and the notice procedures for further objection to this Order set forth below:

### I. THE COURT HAS BEEN ADVISED THAT THE DEBTOR AND THE BANK HAVE STIPULATED TO THE FOLLOWING

(a)     On the filing Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Code. Since then, the Debtors have remained in possession of their assets and have continued to administer the affairs of their estates as debtors-in-possession in accordance with §§ 1107 and 1108 of the Code.

(b)     As of the Filing Date, the Debtors were indebted to the Bank in the approximate amount of $2,365,738.00 (the "*Banks' Claim*") based upon promissory notes and other loan documents executed by the Debtors. The Bank's Claim is secured by duly recorded, valid and enforceable first mortgages on the parcels of real estate described by their common address in Exhibit 1 to the Motion (the "*Real Estate*"), and duly recorded, valid and enforceable assignments of the rents and other income that may be derived therefrom (the "*Prepetition Collateral*"). Such rents and other income constitute cash collateral as that term is defined in §363(a) of the Code (for purposes of this Order, the "*Cash Collateral*"). A summary of the Bank's Claim is set forth on Exhibit 1 attached hereto.

(c)     The Bank's Claim is not subject to any defense or counterclaim or objection on any basis. Accordingly, the Debtors stipulate that the Bank's Claim should be allowed in the amount of $2,365,738.00 as of February 13, 2009, and further stipulates the Bank is secured and is therefore entitled to its legal fees and interest.

2

(d) As described above, the bank has an interest in the Prepetition Collateral and the Cash Collateral. Accordingly, the Bank is entitled to adequate protection for the Debtor's use of the Prepetition Collateral and Cash Collateral under §§ 361, 362, and 363(c) of the Code.

## II. BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTORS AND THE BANK TO THE ENTRY OF THIS ORDER, THE COURT FINDS AS FOLLOWS:

(a) Due notice of the Motion has been given to the Debtors, their counsel, the 20 largest unsecured creditors of the Debtors, the United States Trustee, and all other persons entitled to notice under Bankruptcy Rue 4001(b).

(b) No creditor's committee, as provided for under § 1102 of the code, has yet been appointed in the case.

(c) In consideration for the consent given herein the bank is entitled to the relief set forth in this Order. The protections afforded the Bank's interests herein are fair under the circumstances and the entry of this Order is in the best interests of the Debtors, their creditors and their estates.

(d) The Bank and the Debtor have negotiated the terms and conditions of this Order in good faith and at arms-length and have offered sufficient evidence of the Bank's good faith in agreeing to this Order.

## III. ACCORDINGLY, IT IS HEREBY ADJUDGED, ORDERED AND DECREED THAT:

(a) As adequate protection against the diminution of value of the Bank's interest in the Prepetition Collateral, the bank is hereby granted, pursuant to §§ 361, 363 and 364 of the Code, valid, perfected and enforceable security interests in the liens upon the Real Estate and all rents and other income of any nature or description whatsoever generated by or derived from the Real Estate, whether now existing or hereafter acquired or arising and wherever located, and all

proceeds, rents, products or profits there of (collectively, the "*Postpetition Collateral*"). The security interest in and liens on the Postpetition Collateral shall –

    (1)    at all times be senior to the rights of the Debtors and any successor trustee in these or any subsequent proceedings under the Code, and

    (2)    be subordinate only to valid, enforceable and non-avoidable liens an security interests existing as of the Filing Date.

    (b)    The security interests and liens herein granted –

    (1)    are in addition to all security interests, liens and rights of setoff existing in favor of the court is Bank on the Filing Date;

    (2)    are and shall be valid, perfected, enforceable and effective as of the date of commencement of the present proceedings without any further action by the Debtors of the Bank and without the execution, filing or recording of any financing statements, security agreements, mortgages or other documents; and

    (3)    shall secure payment of the Bank's Claim in an amount equal to any diminution in value of the Bank's interest in the Prepetition Collateral (the "*Adequate Protection Obligation*"), which occurs during the pendency of the Debtors' bankruptcy cases, whether such diminution is a consequence of the Debtors' use of the Prepetition Collateral, economic depreciation of the Prepetition Collateral, or otherwise.

    (c)    Subject to the terms and conditions set forth herein, the Debtors are authorized to use Cash Collateral in accordance with the operating budget attached as Exhibit 2 during the period beginning on the date of the entry of this Order and ending at 12:01 a.m. n March 31, 2009.

    (d)    As additional protection for the interest of the Bank:

4

(1)     The Debtor shall deposit all Cash Collateral arising on or after February 13, 2009, in a Cash Collateral account (the *"Cash Collateral Account"*) to be maintained at the Chase, to be used to segregate the Bank's collateral from other lenders collateral. John Schoppe and Chris Pennington shall be the only authorized signators on the Cash Collateral Account. The Bank may withdraw any amount due it under this Order from the account at any time after such amount has become due.

(2)     The Debtors shall prepare a monthly operating budget for April 2009 and for each subsequent month and shall deliver it to the Bank on or before the 25th day of the preceding month (the *"Budget"*). The Budget must be approved by the Bank. In the event the Bank does not approve the budget, the Debtors may not use Cash Collateral except upon further order of the court. The Debtor is authorized to utilize the Bank's Cash Collateral for amount equal to the Bank's proportionate share of the Debtor's budgeted common management expenses.

(3)     The Debtors are authorized to use Cash Collateral in the Cash Collateral Account only to pay for the common management expenses set forth in the approved Budget.

(4)     On or before March 30, 2009, and on the 30th day of each month thereafter until further order of the court, the Debtors shall pay to the Bank the amount of $11,198.00.

(5)     Debtor's adequate protection payments to HBCC shall be made payable to Harris Bank, **but must be directed and mailed to:** Attn: Nicole Sakowski, 111 West Monroe, 11W, Chicago, IL 60603. Payments not mailed directly to Nicole Sakowski shall not be credited as a required payment pursuant to this order, even though the same may be deposited by Harris Bank. Debtor shall pay all outstanding real estate taxes, or make adequate arrangements for payment of same. Should any property be sold on account of unpaid real estate taxes, Debtor

5

shall tender the full amount necessary to redeem said property within 3 days of being notified of such sale.

(6) On or before March 30, 2009, and on the 30th day of each month thereafter until further order of the court, the Debtors shall pay to the Bank in addition to the amount set forth in the previous paragraph all amounts, if any, required under the Loan Documents to be deposited into any tax and/or insurance escrow account maintained by the Bank for the payment of taxes and insurance on the Real Estate.

(7) Within 5 business days of the date of this Order, the Debtors shall deliver to the bank a certificate of insurance evidencing coverage of the Prepetition Collateral to the extent of its full insurable value, showing the Bank as a loss payee, and showing full payment o the premiums therefore.

(8) If the Bank hereafter request the Debtors to execute and deliver to the Bank financing statements, mortgages or other instruments or documents considered by the Bank to be necessary or desirable to further evidence the perfection of the liens and security interests granted in this Order, or to implement the payment provisions of this Order, the Debtors are hereby authorized to execute and deliver those financing statements instruments and documents.

(9) On or before the 25th day of each month the Debtors shall prepare and send to the Bank c/o Kurt M. Carlson, Much Shelist, 191 N. Wacker Drive, Suite 1800, Chicago, IL 60606, a copy of the Monthly Chapter 11 Business Operating Reports required to be filed for the previous month with the United States Trustee and the Clerk of the Court pursuant to bankruptcy Rule X-1007 and the Guidelines for Debtors-in-Possession promulgated by the United States Trustee (the *"Operating Reports"*).

(e)     Neither the Bank's agreement to the Debtors' use of Cash Collateral nor the bank's approval of any Budget shall be construed as the Bank's approval of the purposes or amounts for which its Cash Collateral is expended, nor is this Order intended, nor shall it be construed as the Bank's consent to any claim under §506(c) of the Code or to otherwise become liable for any costs, expense, disbursements, liability or obligation of any kind or nature payable by or on behalf of the Debtors. This Order does not create a joint venture or partnership of any kin between the Debtors and the Bank.

(f)     This Order does not constitute (1) a determination of adequate protection of the interest of the bank in the Prepetition Collateral and the Cash Collateral, and the Bank may at any time pursue a motion for relief from the automatic stay or for adequate protection of its interests in the Prepetition Collateral or Cash Collateral; (2) a waiver of any right of the Bank, at any time, to file a motion to dismiss or covert, a motion for the appointment of an examiner or a trustee, or to assert any other rights, claims, remedies or defenses available to it; (3) a waiver of any right or claim which the Bank may having arising from the Debtors' conduct or improper use of the Cash Collateral prior to the entry of this Order; or (4) a waiver of any right or claim which the Bank may have arising from the Debtor's prepetition use of the Prepetition Collateral. The Debtors may oppose any relief sought by the Bank for adequate protection, to modify the automatic stay, to convert or dismiss this Chapter 11 case or to appoint a Chapter 11 trustee or examiner. However, in any such proceeding the stipulations and admissions of the Debtors contained herein shall remain binding upon the Debtors.

(g)     By its entry of this Order the Court makes no finding as to the value of the Prepetition Collateral or the extent to which the Bank is the holder of a secured claim in this proceedings.

(h) The Debtor expressly agrees that during the term of this Order it shall not seek, support or permit the imposition of any lien, mortgage, deed of trust or security interest with priority senior or equal to the security interest of the Bank in the Prepetition Collateral or Cash Collateral.

(i) The failure of the debtor to perform its obligations under this Order shall constitute a default. If the Bank gives notice of the default and such default is not cured within 10 calendar days of the effective date of such notice, then the Bank shall be permitted to seek relief from the automatic stay with respect to the Prepetition Collateral and the Cash Collateral. Notice of default shall be given to the Debtor and its counsel via fax or first-class mail, postage prepaid, at the addresses and/or numbers set forth below. Notice via fax shall be effective as of the date of the receipt of transmission produced by the sending fax machine. Notice via first-class mail, postage prepaid, shall be effective four days after mainlining.

(j) No objections to the interim order authorizing this use of cash collateral were filed or received as of March 31, 2009.

(k) The provisions of this Order shall remain in full force and effect unless modified or vacated by other subsequent order of this Court. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this Court or any other court, such stay, modification, or vacation shall not affect the validity and enforceability of any lien, priority, or other benefit authorized hereby with respect to the Adequate Protection Obligation incurred in the intervening period.

(l) The automatic stay provisions of § 362 of the Code are hereby vacated as to the Bank to the extent necessary to implement the terms of this Order.

8

(m)    The subject of this Order is a core proceeding within the meaning of 28 U.S.C. §157.

This Order is immediately applicable and valid and fully effective upon its entry.

Dated: **MAR 3 1 2009** 2009

John Squires, Bankruptcy Judge

MAR 3 1 2009

AGREED:

For the Debtors:

John Lipinsky
Coman & Anderson
2525 Cabot Dr.
Suite #300
Lisle, IL 60532
Phone: (630) 428-2660
Fax No. (630) 428-2549

For the Bank:

Kurt M. Carlson
Colleen E. McManus
Much Shelist
191 N. Wacker Drive
Suite 1800
Chicago, IL 60606
Phone: (312) 521-2000
Fax No. (312) 521-2100

9